**FILED**

**MAY 09 2019**



UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| SD VOICE and CORY HEIDELBERGER,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI G. NOEM, SOUTH DAKOTA GOVERNOR IN HER OFFICIAL CAPACITY; JASON RAVNSBORG, SOUTH DAKOTA ATTORNEY GENERAL IN HIS OFFICIAL CAPACITY; AND STEVE BARNETT, SOUTH DAKOTA SECRETARY OF STATE IN HIS OFFICIAL CAPACITY;<br><br>Defendants. | 1:19-CV-01003-CBK<br><br><br>OPINION AND ORDER |

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| SOUTH DAKOTA NEWSPAPER ASSOCIATION, SOUTH DAKOTA RETAILERS ASSOCIATION, SOUTH DAKOTA BROADCASTERS ASSOCIATION, SOUTH DAKOTA CHAMBER BALLOT ACTION COMMITTEE, THOMAS BARNETT JR., and AMERICANS FOR PROSPERITY,<br><br>Plaintiffs,<br><br>vs.<br><br>STEVE BARNETT, IN HIS OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE, and JASON RAVNSBORG, IN HIS OFFICIAL CAPACITY AS SOUTH DAKOTA ATTORNEY GENERAL,<br><br>Defendants. | 3:19-CV-03010-CBK<br><br><br>OPINION AND ORDER |

Plaintiffs in these two cases filed complaints seeking a preliminary and permanent injunction preventing the State of South Dakota from enforcing Initiated Measure 24[1] ("IM 24"), which was enacted by the South Dakota voters in the 2018 general election. IM 24 bans out-of-state contributions to South Dakota ballot question committees. Plaintiffs assert that IM 24 violates the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution. The trial on the merits was advanced and consolidated with the hearing on the motion for a preliminary injunction as authorized by Fed. R. Civ. P. 65(a)(1).

## DECISION

Any judge must view with great deference any legislative enactment, especially when enacted by a majority of the voters of South Dakota, which is the case here. I do so here.

The South Dakota Constitution expressly reserves to the electorate the rights to initiative and referendum. S.D. Const. art. III, § 1. Initiated or referred laws are placed on the ballot only after the sponsor complies with the provisions of SDCL Chapter 2-1. Once a proposed measure complies with all laws required for placement on the ballot, the South Dakota Secretary of State oversees the collection of pro and con statements as well as the Attorney General's statement that will accompany the proposed measure on the ballot, in compliance with SDCL Chapter 12-13. The Secretary of State also oversees compliance with campaign finance laws, SDCL Chapter 12-27, applicable to, *inter alia*, ballot question committees.

In 2016, South Dakota voters passed Constitutional Amendment S, a crime victim's rights measure which was dubbed in the media as "Marsy's Law[2]," despite an extensive media campaign by opponents who complained it was entirely funded by an out-of-state interest. Marsy's Law was not the only measure on the 2016 ballot that was supported by out-of-state interests. According to then-Governor Dennis Daugaard in his published pro statement in

---

[1] Beginning with the 2004 general election, each proposed constitutional amendment is consecutively designated by a letter and each initiated measure or referred law is consecutively designated by a number. S.D. Codified Laws § 12-13-4. In the 14 years since the enactment of that rule, 26 constitutional amendments and 26 referred or initiated measures have been submitted to the Secretary of State and assigned letters or numbers. Scores more proposals from the electorate did not comply with requirements and were never assigned a letter or number.

[2] "Henry Nicholas founded the national group Marsy's Law for All to advocate for a list of certain crime victim rights called Marsy's Law, named after Nicholas' sister Marsalee Nicholas. Ballotpedia identified $29.7 million in total contributions to the support campaigns for the six Marsy's Law ballot measures that had been approved before 2018. The first was passed in California in 2008. The majority of all contributions supporting Marsy's Law measures—91 percent, or $27 million—came from Henry Nicholas." https://ballotpedia.org/South_Dakota_Constitutional_Amendment_Y,_Changes_to_Marsy%27s_Law_Crime_Victim_Rights_Amendment_(June_2018) (visited May 7, 2019).

2

support of IM 24, six of the seven initiated measures on the 2016 general election ballot were urged by out-of-state interests who donated 97% of the $9.6 million spent on such initiatives.

> That year, out-of-state interests used South Dakota's low signature requirements and cheap media markets as a testing ground for their ideas. They have turned our state founders' intent completely on its head. Let's send their political business model somewhere else. Support initiated measure 24 to ban out-of-state financial contributions to ballot committees. Let's protect a SOUTH DAKOTAN's right to petition the people, but deny that privilege to New York, Massachusetts and California business interests. They don't have kids in our schools, they don't attend our churches, and you won't see them at the football game this weekend. That's because they don't live here. Let's limit their involvement unless they can demonstrate either residency or a legitimate business interest in South Dakota.

https://sdsos.gov/elections-voting/assets/2018BQPamphlet.pdf (visited May 7, 2019).

IM 24, which will be codified as part of South Dakota's campaign finance laws at SDCL 12-27-18.2 effective July 1, 2019, provides:

> Any contribution to a statewide ballot question committee by a person who is not a resident of the state at the time of the contribution, a political committee that is organized outside South Dakota, or an entity that is not filed as an entity with the secretary of state for the four years preceding such contribution is prohibited. If a statewide ballot question committee accepts a contribution prohibited by this section, the secretary of state shall impose a civil penalty equal to two hundred percent of the prohibited contribution after notice and opportunity to be heard pursuant to chapter 1-26. Any civil penalty collected pursuant to this section shall be deposited into the state general fund.

The prohibition on receipt of out-of-state contributions applies only to ballot question committees. No restriction on out-of-state contributions applies to candidates or candidate committees, political action committees, or political parties.

A person who is not a resident of South Dakota cannot donate to a statewide ballot question committee but no state law prevents an individual from making an independent communication expenditure, as defined by SDCL 12-27-1(11), to support or oppose a ballot initiative. An entity, defined by SDCL 12-27-1(15), that is not "filed" with the Secretary of State may not contribute to a ballot question committee but nothing prevents a foreign corporation organized under the laws of another state but registered with the Secretary of State to do business in South Dakota from contributing (as long as they have been so registered at least 4 years).

3

Further, an "entity" organized in South Dakota can freely contribute to a ballot question committee without regard to the source of the funds contributed.

The term "statewide ballot question committee" is not defined by IM 24 nor by South Dakota's campaign finance laws, SDCL Title 12-27, where IM 24 is to be codified.

Although ballot question committees must register with the Secretary of State, SDCL 12-27-3, and comply with state campaign finance rules, individuals, whether they are residents or non-residents, have no obligation to register their independent spending in support of or in opposition to a ballot measure.

## DECISION

### I. First Amendment Claims.

Plaintiffs contend that IM 24 violates their First Amendment right to engage in debate on public issues through contributions to fund advocacy efforts. Plaintiffs South Dakota Newspaper Association, et al. also contend that IM 24 prohibits their associational rights protected by the First Amendment.

The major purpose of the First Amendment "was to protect the free discussion of governmental affairs." Mills v. State of Ala., 384 U.S. 214, 218, 86 S. Ct. 1434, 1437, 16 L. Ed. 2d 484 (1966). This protection extends to the discussion of all matters related to political processes. *Id.* "The First Amendment affords the broadest protection to such political expression in order 'to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Buckley v. Valeo, 424 U.S. 1, 14, 96 S. Ct. 612, 632, 46 L. Ed. 2d 659 (1976) (*quoting* Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)). "The First Amendment protects political association as well as political expression" because "effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." Buckley v. Valeo, 424 U.S. at 15, 96 S. Ct. at 632–33.

The Supreme Court has long recognized that "virtually every means of communicating ideas in today's mass society requires the expenditure of money." *Id.* at 19, 96 S.Ct. at 635. "All speakers, including individuals and the media, use money amassed from the economic marketplace to fund their speech, and the First Amendment protects the resulting speech." Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 130 S. Ct. 876, 884, 175 L. Ed. 2d 753 (2010). A restriction on the amount of money a person or group can contribute to a campaign

4

"necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." Buckley v. Valeo, 424 U.S. at 19, 96 S.Ct. at 634. "Given the important role of contributions in financing political campaigns, contribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy." Buckley v. Valeo, 424 U.S. at 21, 96 S. Ct. at 636.

The Supreme Court has held that the First Amendment prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others." Citizens United v. Fed. Election Comm'n, 558 U.S. at 340, 130 S. Ct.at 898. "Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.*, 130 S.Ct. at 899. "The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each." Citizens United v. Fed. Election Comm'n, 558 U.S. at 340–41, 130 S. Ct. at 899. IM 24 prohibits out-of-state persons from expressing their viewpoint through certain campaign contributions and instead favors in-state speech on ballot initiative issues. "When a state restricts speech, it bears the burden of proving the constitutionality of its actions." Missourians for Fiscal Accountability v. Klahr, 892 F.3d 944, 949 (8th Cir. 2018) (*quoting* McCutcheon v. FEC, ___ U.S. ___, ___, 134 S.Ct. 1434, 1452, 188 L.Ed.2d 468 (2014)) (cleaned up[3]).

The First Amendment includes, in addition to the right to engage in political speech, also the right to association. "The right to join together for the advancement of beliefs and ideas is diluted if it does not include the right to pool money through contributions, for funds are often essential if advocacy is to be truly or optimally effective." Buckley v. Valeo, 424 U.S. at 65–66, 96 S. Ct. at 657 (cleaned up).

> Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly. It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. Of course, it is immaterial whether the

---

[3] "Cleaned up" is a new parenthetical used . . . when extraneous, residual, non-substantive information has been removed, in this case, internal quotation marks, brackets, additional quoting parentheticals and an ellipsis. United States v. Steward, 880 F.3d 983, 987 (8th Cir. 2018) (cleaned up).

5

> beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.

Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460–61, 78 S. Ct. 1163, 1171, 2 L. Ed. 2d 1488 (1958) (internal citations omitted).

The Supreme Court in Buckley v. Valeo distinguished between contribution limits and expenditure limits, finding that expenditure limits represent substantial restraints on political speech while contribution limits entail only a marginal restriction on the contributor's ability to engage in political speech. Buckley v. Valeo, 424 U.S. at 19-20, 96 S.Ct. at 635. The Supreme Court thus applied a lower level of scrutiny to contribution limits, finding that they must only satisfy a "rigorous standard of review," Id. at 29, 96 S.Ct. at 640, requiring the government to demonstrate a sufficiently important interest and to employ "means closely drawn to avoid unnecessary abridgement of associational freedoms." McCutcheon v. Fed. Election Comm'n, 572 U.S. 185, 197, 134 S.Ct. 1434, 1444, 188 L.Ed.2d 468 (2014). However, expenditure limitations were subject to "exacting scrutiny," Id. at 44, 96 S. Ct. at 647, requiring the government to demonstrate that a regulation promotes a "compelling interest and is the least restrictive means to further the articulated interest." McCutcheon v. Fed. Election Comm'n, 572 U.S. at 197, 134 S. Ct. at 1444.

The Supreme Court held in Citizens United v. Fed. Election Comm'n that laws that restrict a certain class of people from making political contributions and thus burden political speech are "subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United v. Fed. Election Comm'n, 558 U.S. at 340, 130 S. Ct. at 898 (cleaned up). The law at issue in Citizens United regulated independent expenditures by corporations. The Supreme Court did not discuss the expenditure/contribution dichotomy set forth in Buckley v. Valeo but instead came to the blanket conclusion that in the context of political speech, the Government may not impose restrictions on certain disfavored speakers. Citizens United v. Fed. Election Comm'n, 558 at 341, 130 S. Ct. at 899.

The Supreme Court in McCutcheon returned to the Buckley v. Valeo distinction between expenditures and contributions, applying the lower rigorous standard of review to a federal election law that set an aggregate limit on individual contributions to candidates or party committees. McCutcheon v. Fed. Election Comm'n, 572 U.S. at 197, 134 S. Ct. at 1444. The

6

Supreme Court declined to consider whether to uphold the <u>Buckley v. Valeo</u> distinction between the level of scrutiny applied to laws that limit contributions and expenditures because the aggregate limit law failed under even the closely drawn test. <u>Id.</u> at 198-199, 134 S. Ct. at 1445-46.

The United States Court of Appeals for the Eighth Circuit recently held that laws that regulate political contributions must be analyzed under the exacting scrutiny standard. <u>Free & Fair Election Fund v. Missouri Ethics Comm'n</u>, 903 F.3d 759, 763 (8th Cir. 2018). Laws that significantly interfere with protected rights of political association cannot be sustained unless "the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." <u>Buckley v. Valeo</u>, 424 U.S. at 25, 96 S. Ct. at 638; <u>McCutcheon v. Fed. Election Comm'n</u>, 572 U.S. at 197, 134 S. Ct. at 1444; <u>Free & Fair Election Fund v. Missouri Ethics Comm'n</u>, 903 F.3d at 763.

Defendants contend that the Court should reject exacting scrutiny and instead apply the rigorous standard of review to IM 24. IM 24 is unlike the contribution limits cases because it applies, not to candidates, but instead only to ballot committees. Further, IM 24 does not simply limit the amount of contributions an individual or entity may make to a ballot committee. It outright bans certain contributors from making any direct contribution to such a committee. The parties have not cited to any analogous cases.

The Supreme Court in <u>Buckley v. Valeo</u> recognized that "[g]iven the important role of contributions in financing political campaigns, contribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy." <u>Id.</u> at 21, 96 S.Ct. at 636. In <u>Buckley v. Valeo</u> there was no evidence "that the contribution limitations imposed by the Act would have any dramatic adverse effect on the funding of campaigns and political associations." 424 U.S. at 21, 96 S.Ct. at 636. The evidence received in this case is to the contrary. A substantial portion, if not all, of the contributions to the ballot committee supporting Macy's law were from an out-of-state donor. Further, SD Voice received in the past, and is currently receiving, a substantial portion of its funding from out-of-state contributors.

Given the nature of the ban at issue here, the strict scrutiny test used in <u>Citizens United</u> and <u>Free & Fair Election Fund v. Mo. Ethics Comm'n</u> should apply. IM 24 bans all direct political speech from one segment of society, a practice specifically struck down in <u>Citizens</u>

7

United. The total ban on certain out-of-state contributions cannot withstand scrutiny unless the defendants can articulate a compelling reason for the ban. As a matter of law, whatever test is applied results in a finding that IM 24 is unconstitutional.

Defendants contend that the "State's chief interest implicated by IM 24 is protecting its democratic self-government from those who cannot vote on a state ballot question." It is not clear to this Court how the defendants determined what the intended interest was of the 174,683 voters who voted in favor of IM 24. *See* http://electionresults.sd.gov/ (visited May 7, 2019). It is clear that the Governor of South Dakota urged voters to adopt IM 24 to further the interest of preventing non-residents from having any voice concerning South Dakota ballot issues in connection with ballot issue committees.

As set forth above, the Supreme Court specifically held that the First Amendment prohibits the government from imposing restrictions on the political speech of certain disfavored speakers. Citizens United v. Fed. Election Comm'n, 558 at 341, 130 S. Ct. at 899. Further, the Supreme Court has ruled that the government cannot limit political speech for any reason other than to "target what we have called 'quid pro quo' corruption or its appearance." McCutcheon v. Fed. Election Comm'n, 572 U.S. at 192, 134 S. Ct. at 1441. "Campaign finance restrictions that pursue other objectives, we have explained, impermissibly inject the Government 'into the debate over who should govern.'" *Id*. The claimed interest in protecting democratic self-government does not constitute a compelling interest justifying interference with political speech and would not even be considered a sufficiently important interest under the lower level of scrutiny, as already noted.

Even if a ban on certain people participating in political speech were allowed, defendants cannot show that IM 24 is narrowly tailored to the claimed interest in self-government. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." Frisby v. Schultz, 487 U.S. 474, 485, 108 S. Ct. 2495, 2503, 101 L. Ed. 2d 420 (1988). IM 24 seeks to target only out-of-state contributors who want to make contributions to fund speech about ballot issues. IM 24 does not prevent any non-resident person, corporation, or Political Action Committee from contributing to the campaign for a candidate. Most state laws are enacted by state legislators (as opposed to by initiative). Since political candidates who are elected are the usual lawmakers, state law can still be manipulated by non-residents who

contribute to the election of candidates who possess similar ideology or who have made campaign promises to support certain laws.

IM 24 does not prevent a non-resident from contributing to a South Dakota PAC (which may then contribute to a ballot question committee) or from contributing to some other South Dakota entity that makes contributions to ballot question committees. Interestingly, the major donor to the ballot question committee that supported Marsy's law was a South Dakota corporation (apparently funded by a California resident).

IM 24 is not designed to eliminate the "evil" of interference in self-governance.

> Where a regulation restricts a medium of speech in the name of a particular interest but leaves unfettered other modes of expression that implicate the same interest, the regulation's underinclusiveness may diminish the credibility of the government's rationale for restricting speech in the first place. In other words, underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.

Johnson v. Minneapolis Park & Recreation Bd., 729 F.3d 1094, 1100 (8th Cir. 2013) (cleaned up).

IM 24 restricts contributions to a statewide (whatever that is) ballot committee from a political committee organized outside of South Dakota. However, there is no prohibition on the residency of donors to other political committees that are organized in South Dakota. Thus, a South Dakota PAC could receive substantial sums from out-of-state donors and legally contribute those funds to a ballot committee. IM 24 does nothing to prohibit out-of-state individuals or corporations from making independent expenditures to purchase political ads from media outlets or disseminating political materials through the mail on their own behalf. Phillip Morris could purchase political ads urging South Dakotans to oppose an initiated measure banning smoking and neither IM 24 or any other South Dakota campaign finance law would prevent the expenditure. IM 24 would not have prevented the so-called evil it sought to target – independent spending by an out-of-state individual to support a South Dakota ballot issue.

IM 24 allows contributions to ballot question committees from "an entity" that is "filed as an entity with the secretary of state for the four years preceding" the contribution. "Entity" is defined by SDCL 12-27-1(15) as:

> any organized or unorganized association, business corporation, limited liability company, nonprofit corporation, limited liability partnership, limited liability limited partnership, limited partnership, partnership, cooperative, trust except for a trust account representing or containing only a contributor's personal funds, a

9

>business trust, association, club, labor union, or collective bargaining organization; any local, state, or national organization to which a labor organization pays membership or per capita fees, based upon its affiliation and membership; any trade or professional association that receives its funds from membership dues or service fees, whether organized inside or outside the state; any other entity of any kind, except a natural person that is, has been, or could be recognized by law; or any group of persons acting in concert that is not defined as a political committee in this chapter except, an entity is not a candidate, a public office holder, or a political committee.

There are of course thousands of such entities registered with the South Dakota Secretary of State who have been registered for over four years. Any of those entities could receive funds from out-of-state sources and donate to a ballot question committee. Thus, that exception does nothing to further the State's interest in preventing out-of-state money from influencing South Dakota ballot questions. What that exception does is prevent any entity newly formed from making contributions and participating in political speech. IM 24's ban is underinclusive, which diminishes the credibility of the State's rationale for restricting speech in the first place. In addition, as pointed out by the Chamber Committee, IM 24 discriminates against new business coming into South Dakota.

IM 24 bans political speech by certain speakers through its ban on certain contributions to ballot question committees. The ban violates the First Amendment because it is not narrowly tailored to a compelling government interest. IM 24 is not even closely drawn to avoid unnecessary abridgment of associational freedoms.

The right of initiative is very important in states like South Dakota where the dominant political party controls, and has for 26 years, the office of the governor, the state House and the State Senate. This so-called "trifecta" makes it more difficult for the opposition party to pursue its agenda in the state legislature. https://ballotpedia.org/Party_control_of_South_Dakota_state_government (visited May 7, 2019). The evidence presented in this case demonstrates how important out-of-state contributions are for the ballot question committees to pursue political speech. The State cannot enact restrictions that so completely prevent those pursuing unpopular laws from amassing the resources necessary for effective advocacy. Buckley v. Valeo, 424 U.S. at 21, 96 S.Ct. at 636.

Although not raised by the parties, IM 24 "raises serious problems of vagueness" which are "particularly treacherous where, as here, the violation of its terms carries criminal penalties and fear of incurring these sanctions may deter those who seek to exercise protected First

10

Amendment rights." Buckley v. Valeo, 424 U.S. at 76–77, 96 S. Ct. at 662. IM 24 is vague in that the measure bans contributions to "statewide ballot question committees" but that term is not defined by IM 24 nor is it defined elsewhere in South Dakota's campaign finance laws. Does the contribution ban apply only if a particular ballot question committee operates in all counties, a given number of counties, or only certain enumerated counties?

IM 24 bans "any" contribution to a statewide ballot question committee by a non-resident. Contribution is defined to include, *inter alia*, any gift or other valuable consideration, and the use of services or property without full payment. SDCL 12-27-1(6). The term "contribution" as used in SDCL Chapter 12-27 does not include volunteer services or the free use of a person's residence. SDCL 12-27-1(6). IM 24 does not just apply to a contribution, it applies to "any" out of state contribution. It is not clear whether the exception for volunteer services in 12-27-1(6) applies to non-resident volunteers. That issue was raised by the Court at the hearing in this matter. The defendants, through their representative from the Secretary of State's Office and through counsel, stated that IM 24 would ban contributions from non-resident volunteers coming here and incurring expenses in connection with a ballot issue.

IM 24 would ostensibly prohibit plaintiff Barnett, a former South Dakota resident who still maintains a law license in this state, and other non-residents from traveling to South Dakota to campaign, thus donating travel, lodging, and other expenses in support of a ballot question committee. Any ballot question committee who "accepts" such a contribution is subject to heavy civil and criminal penalties. This ban on volunteer contributions is especially egregious when the ballot question committee is not affiliated with or able to supervise such out-of-state volunteers. Volunteers could well subject any ballot issue committee to heavy civil and criminal penalties. Ballot issue committees could well be required to attempt to prevent non-resident volunteers from traveling to South Dakota or at least disclaiming the acceptance of such volunteers.

I find that IM 24 is an unconstitutional abridgment of the First Amendment to the United States Constitution.

**B. Commerce Clause Claims.**

The Commerce Clause grants to Congress the exclusive power "to regulate Commerce ... among the several States." Art. I, § 8, Cl. 3. The Commerce Clause is a "positive grant of power to Congress" which implies a "negative command, known as the dormant Commerce

11

Clause" which prohibits the "States from discriminating against or imposing excessive burdens on interstate commerce without congressional approval." Comptroller of Treasury of Maryland v. Wynne, 135 S. Ct. 1787, 1794, 191 L. Ed. 2d 813 (2015). *See also,* Indep. Charities of Am., Inc. v. State of Minn., 82 F.3d 791, 798 (8th Cir. 1996) ("the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce"). The Supreme Court has expressed the limitations as two-fold: "First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." South Dakota v. Wayfair, Inc., ___ U.S. ___, ___, 138 S. Ct. 2080, 2091, 201 L. Ed. 2d 403 (2018). "A discriminatory law is virtually *per se* invalid and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 338, 128 S. Ct. 1801, 1808, 170 L. Ed. 2d 685 (2008) (cleaned up).

Plaintiffs contend that IM 24 restricts interstate commerce by prohibiting financial contributions to cross state lines. There is no question that IM 24 is discriminatory on its face, in its purpose, and in its effect – it prohibits certain campaign contributions from non-residents and favors contributions from state residents. It further prohibits in-state ballot committees from soliciting and receiving contributions from non-residents. One question is whether campaign contributions constitute commerce. They do.

It is without question that the term "affecting interstate commerce," when used in the context of federal criminal law, encompasses financial transactions involving banks and other financial institutions. Campaign contributions likewise involve the use of banks and financial institutions. In that regard, any regulation that prohibits a person or entity from transferring money to another person or entity affects interstate commerce.

Two different standards have evolved for determining whether a state law impermissibly interferes with interstate commerce. If the law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Under the Pike test, the challenger of the law bears the burden of showing that there is no legitimate state interest or that the burden on interstate commerce is clearly excessive when compared to the local benefits. "When a state statute directly regulates or

12

discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry." Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 579, 106 S. Ct. 2080, 2084, 90 L. Ed. 2d 552 (1986).

The Supreme Court recognizes that "there is no clear line separating the category of state regulation that is virtually per se invalid under the Commerce Clause, and the category subject to the Pike v. Bruce Church balancing approach. Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 579, 106 S. Ct. 2080, 2084, 90 L. Ed. 2d 552 (1986). Wherever that line is drawn, it is clear that IM 24 is on the side of the line which is *per se* invalid because it was intended to discriminate against out-of-state interests. IM 24 without question violates the Commerce Clause and is unconstitutional.

### C. Equal Protection.

The Fourteenth Amendment to the United States Constitution prohibits the State from enforcing "any law which shall abridge the privileges or immunities of a citizen of the United States" and from denying "to any person within its jurisdiction the equal protection of the laws." The Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985).

> The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. at 440, 105 S. Ct. at 3254 (internal citations omitted). "Laws frequently classify persons with consequences that advantage some and disadvantages (sic) others. But certain classifications are impermissible because of who they effect and how." Schmidt v. Ramsey, 860 F.3d 1038, 1047 (8th Cir. 2017). "Unless a law burdens a fundamental right, targets a suspect class, or has a disparate impact on a protected class and was motivated by a discriminatory intent, we apply rational basis scrutiny to the challenged law." New Doe Child #1 v. United States, 901 F.3d 1015, 1027 (8th Cir. 2018). "If, on the other hand, a law . . . 'impinges on personal rights protected by the Constitution,' we

13

subject the law to 'strict scrutiny,' and we will uphold it only if it is 'suitably tailored to serve a compelling state interest.' Schmidt v. Ramsey, 860 F.3d at 1047.

Plaintiffs SD Voice and Heidelberger contend that IM 24 violates the Equal Protection Clause by excluding some people and groups from participating in the ballot initiative process and by creating rules restricting participation in the political process that apply only to ballot question committees. There is no need to reach these issues because I have previously found that plaintiffs have established the likelihood of success on the merits of their First Amendment and Commerce Clause claims.

### D. Standing

Defendants challenge plaintiffs' standing to raise the issues set forth above. "It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007). However, in this case I will resolve the standing issue last because plaintiffs' standing is dependent upon many of the facts set forth above.

District courts must evaluate three elements to determine whether a plaintiff has standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (cleaned up). Defendants contend that plaintiffs lack standing because they cannot show a particularized injury. One or more plaintiffs in each of the two cases satisfies the threshold inquiry as to their First Amendment and Commerce Clause claims.

Barnett and Americans for Prosperity clearly have standing to assert their First Amendment right to free speech and right of association claims. Plaintiffs have asserted "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 794 (8th Cir. 2016). IM 24 interferes with concrete and particularized First Amendment rights to engage in political speech

14

and to associate with others to do so and their concern that the law will prevent them from engaging in protected conduct is actual and imminent.

The remaining plaintiffs also have standing to bring their First Amendment claims because they are all prohibited by IM 24 from accepting contributions to ballot issue committees from non-residents to fund their political speech. Such funding has historically been a major portion of the funds available to ballot committees to fund their speech. The Supreme Court has also recognized that where plaintiffs challenge a statute that allegedly chills free speech, litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956–57, 104 S. Ct. 2839, 2847, 81 L. Ed. 2d 786 (1984) (internal quotations and citations omitted).

Barnett and Americans for Prosperity clearly have standing to assert a Commerce Clause claim because IM 24 directly prevents them from making payments to any South Dakota ballot committee, as they have done in the past.

The Eighth Circuit has held that "in Commerce Clause jurisprudence, cognizable injury is not restricted to those members of the affected class against whom states or their political subdivisions ultimately discriminate." S. Dakota Farm Bureau, Inc. v. Hazeltine, 340 F.3d 583, 592 (8th Cir. 2003). Where, as here, the compliance with the law is coerced by threat of civil or criminal enforcement penalties, plaintiffs' injury is actual or imminent. Keller v. City of Freemons, 719 F.3d 931, 947 (8th Cir. 2013). SD Voice, Heidelberger, the South Dakota Newspaper Association, the South Dakota Retailers Association, the South Dakota Broadcasters Association and the South Dakota Chamber Ballot Action Committee all have standing to bring their Commerce Clause claim because IM 24 has a direct negative impact on their ability to receive out-of-state funding for their ballot endeavors.

## CONCLUSION

IM 24 is unconstitutional because it violates First Amendment rights to engage in political speech and to associate with others to fund political speech. IM 24 is also unconstitutional because it violates the Commerce Clause by interfering with the free flow of money between persons or entities from another state and ballot questions committees in South Dakota. Attorney fees and costs, both statutory and non-statutory, should be awarded in both cases, all of which items will be determined later by the Court.

## ORDER

Based upon the foregoing,

IT IS ORDERED that Kristi G. Noem, in her official capacity as Governor of South Dakota, Steve Barnett, in his official capacity as Secretary of State of the State of South Dakota, Jason Ravnsborg, in his official capacity as Attorney General of the State of South Dakota, and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, are enjoined from carrying out, implementing, and enforcing the provisions of Initiated Measure 24, S.D.Codified Laws § 12–27–18.2, in any manner whatsoever, in accordance with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that counsel for plaintiffs shall present to the Court their properly documented affidavits as to attorney fees and all costs they have incurred in connection with these law suits and resistance to IM 24 after the passage of IM 24.

DATED this 9th day of May, 2019.

BY THE COURT:

_____
CHARLES B. KORNMANN
United States District Judge